Pierrepont I. PRENTICE, Plaintiff,

v.

Thomas HSU, Molly Joffey, Eugene Whit-
lock, Phillip Tramberg and T.E.A.C.
Corporation, Defendants.

No. 66 Civ. 2461.

United States District Court
S. D. New York.

Jan. 25, 1968.

Berman & Powers, New York City, for plaintiff.

Abraham Kaufman, New York City, for defendants.

MOTLEY, District Judge.

*Memorandum Decision and Order*

This is a civil action for rescission and damages arising under the Securities Act of 1933 and the Securities Act of 1934, 15 U.S.C. §§ 77*l*(2), 77q(a) and 15 U.S.C. § 78i(b) and Rule 10b–5, 17 C.F.R. 240.-10b–5. The complaint alleges that defendant Hsu 1) promised to invest over $1,000,000 in plaintiff's corporation in exchange for stock therein; 2) represented that he had negotiated and obtained a valuable contract from defendant T.E.A.C. Corporation which he would assign to plaintiff's corporation; 3) represented that he had a secret cache of securities and cash in Formosa available for investment in plaintiff's corporation. The complaint further alleges that Hsu's representations of his efforts to retrieve his "hidden Formosa monies" were used as inducements to get plaintiff to advance $96,000 in a series of loans to Hsu to help him finance his efforts, for which loans Hsu delivered promissory notes to plaintiff. The complaint then alleges that such representations were also used to induce plaintiff to advance $15,000 additional monies to defendants T.E.A.C. and Tramberg and the sum of $40,000 for extensive travel to and from Japan and Formosa for these defendants. Next, the complaint alleges that Hsu never intended to purchase stocks in plaintiff's corporation, did not have any valuable contract with T.E.A.C., and had no hidden assets. Finally, the complaint alleges that the scheme to defraud plaintiff included the offer and sale of notes to plaintiff by means of a prospectus and oral communications which were misleading; and that defendants have used means and instrumentalities of interstate commerce and of the mails to defraud plaintiff in violation of the Securities Acts and the laws of New York.

During the course of an examination before trial of defendant Hsu, plaintiff asked Hsu questions concerning Hsu's transactions with plaintiff in connection with the alleged fraud which Hsu refused to answer on Fifth Amendment grounds.[1]

After Hsu testified to the payment of some money to him by plaintiff, repre-

---

1. When did you meet Molly Joffey?
   When did you meet Eugene Whitlock?
   Do you know him (Phillip Tramberg) as Mr. Phillips?
   When did you meet him (Pierrepont I. Prentice)?
   Do you know a company known here as T.E.A.C. Corporation?
   Did you ever obtain any money from Pierrepont I. Prentice?
   Did you ever make any promises to Pierepont Prentice?
   Do you know whether Molly Joffey has a criminal record?
   Do you know whether Mr. Phillip Tramberg has a criminal record?
   Have you ever used an alias?
   Were you ever in the Chinese Army?
   Were you introduced to people and did you answer to the term, "General Hsu"?
   Were you ever in Taiwan?
   Could you tell us the basis of your contention that you do not owe Mr. Prentice any money?

   Mr. Hsu, did you act together with Molly Joffey, Eugene Whitlock, Phillip Tramberg and T.E.A.C. Corporation to defraud Mr. Prentice out of approximately a hundred and fifty thousand dollars?
   Did you promise to invest approximately a million dollars in Video Medical Electronics Corporation in the Spring of 1965?
   Did you know in the Spring of 1965 that Molly Joffey was Mr. Prentice's executive secretary?
   Did you tell Mr. Prentice that you had access to securities and cash on the Island of Formosa so that it might be available for investment in Video Medical Electronics Corporation?
   Did you induce Mr. Prentice to lend additional monies to T.E.A.C. and Mr. Tramberg?
   Is it not a fact that you had no money in any safe deposit box in Taiwan?
   Mr. Hsu, what is your occupation?
   Are you presently under indictment?

sented by promissory notes to plaintiff, plaintiff claimed that Hsu waived any privilege by answering these questions.[2]

This action was commenced on August 8, 1966. Defendant was examined on June 14, 1967. On August 8, 1967, plaintiff moved this court for an order compelling Hsu to answer the questions which he refused to answer on the ground of self incrimination. Pending such answers, plaintiff asks that defendant's examination of plaintiff be stayed. The motion is denied.

An indictment of Hsu for the alleged fraudulent activities complained of in plaintiff's complaint was returned on March 8, 1967. Hsu was convicted on January 12, 1968, of eleven of the twelve counts in the indictment.

In opposition to plaintiff's motion, Hsu first challenged the subject matter jurisdiction of this court. He also invokes his Fifth Amendment privilege against self incrimination and denies any waiver thereof during the course of his deposition.

■ Under the applicable federal statutes, "security" is defined as " * * any note, stock, treasury stock, bond, debenture, evidence of indebtedness * * ". 15 U.S.C. § 77b(1). That promissory notes are within the intendment of the securities laws cannot be seriously questioned. Llanos v. United States, 206 F. 2d 852, 853–854 (9th Cir. 1953), cert. denied, 346 U.S. 923, 74 S.Ct. 310, 98 L.Ed. 417; United States v. Monjar, 147 F.2d 916, 920 (3rd Cir. 1945), cert. denied, 325 U.S. 859, 65 S.Ct. 1191, 89 L.Ed. 1979; S.E.C. v. Vanco, Inc., 166 F.Supp. 422, 423 (D.N.J.1958). The Securities Act of 1933 creates civil liability

for any person who "offers or sells" a security by means of an oral communication which includes an untrue statement of a material fact. 15 U.S.C. § 77l (2). Jurisdiction of claims under 15 U.S.C. § 77l(2) is in this court. 15 U.S.C. § 77v. The Securities Act of 1933, 15 U.S.C. § 77q, and the Securities Act of 1934, 15 U.S.C. § 78j(b) also outlaw fraudulent activities in interstate commerce in the purchase or sale of any securities. One who violates the statutory prohibitions against fraud in the purchase or sale of securities is also subject to civil liability. Fischman v. Raytheon Mfg. Co., 188 F.2d 783 (2d Cir. 1951), and Thiele v. Shields, 131 F. Supp. 416 (S.D.N.Y.1955). Jurisdiction of claims arising under 15 U.S.C. § 77q (a) and 15 U.S.C. § 78j(b) is also in this court. 15 U.S.C. §§ 77v(a), 78 aa. This court, consequently, has jurisdiction of this action.

■ The purpose of the Fifth Amendment privilege is to preclude the use of official force to compel a witness to recite a sequence of events which could lead to his conviction. Malloy v. Hogan, 378 U.S. 1, 11–12, 84 S.Ct. 1489, 12 L.Ed. 2d 653 (1964); Curcio v. United States, 354 U.S. 118, 122, 77 S.Ct. 1145, 1 L. Ed.2d 1225 (1957); Emspak v. United States, 349 U.S. 190, 198–199, 75 S.Ct. 687, 99 L.Ed. 997 (1955). In consonance with this aim, the courts have afforded the Amendment a liberal construction. Miranda v. State of Arizona, 384 U.S. 436, 461, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Ullmann v. United States, 350 U.S. 422, 426, 76 S.Ct. 497, 100 L.Ed. 511 (1956); Quinn v. United States, 349 U.S. 155, 162, 75 S.Ct. 668, 99 L.Ed.

2. Did you ever make any promissory notes to the order of Mr. P. I. Prentice?
A. Yes.
In what amount?
A. I don't remember.
Mr. Dienstag (attorney for plaintiff): Mr. Kaufmann, will you concede that the promissory notes, photo copies of which are annexed to the Complaint as Exhibit A, were made by your client, Thomas Hsu, to the order of P. I. Prentice.
* * * * *

Mr. Kaufmann: I concede for the record that six notes attached to my copy of the Complaint as Exhibit A were in fact made by the defendant.
* * * * *
Did you pay Mr. Prentice the amounts of money which these notes represent?
A. No.
You testified before that you do not owe Mr. Prentice any money; is that correct?
A. Yes.

964 (1955); Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951); Counselman v. Hitchcock, 142 U.S. 547, 562, 12 S.Ct. 195, 35 L.Ed. 1110 (1892).

■ The fact that Hsu has sought to invoke the privilege in this civil proceeding as opposed to the criminal proceeding against him is no bar to the applicability of the privilege. McCarthy v. Arndstein, 266 U.S. 34, 40, 45 S.Ct. 16, 69 L.Ed. 158 (1924); Malloy v. Hogan, supra; Watkins v. United States, 354 U.S. 178, 77 S.Ct. 1173, 1 L.Ed.2d 1273 (1957).

The indictment charges that Hsu " * * * unlawfully, wilfully and knowingly did devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property of a value of $5,000 and more by means of false and fraudulent pretenses, representations and promises from * * * [plaintiff] * * * by inducing and attempting to induce * * * [plaintiff] * * to be defrauded to part with [his] money and property * * * "

■ Under the circumstances, the court agrees that questions propounded to Hsu and set forth in footnote 1, supra, concerning the transactions described in the complaint and in the indictment are properly subject to Fifth Amendment reservations. Indeed, some of the questions inquired whether Hsu had promised to invest a million dollars in Video Medical Electronics Corporation (plaintiff's corporation) or if he had defrauded plaintiff out of approximately a hundred and fifty thousand dollars.[3]

■ The remaining question before the court is whether Hsu waived the privilege by answering as he did some of the questions regarding the notes. Certainly, a defendant can waive his Fifth Amendment privilege. Upon a claim of waiver and denial of waiver, this court must inquire into the circumstances to see if a waiver has occurred. Hsu answered "yes" to making promissory notes to the order of plaintiff, although Hsu could not remember the amount of the notes. Hsu also testified that he did not owe plaintiff approximately one hundred thousand dollars. Counsel for plaintiff secured concessions from Hsu and his lawyer that certain promissory notes had been made by Hsu.

In response to whether he had paid plaintiff the amount of money which those notes represented, Hsu replied. "No", but still urged that he did not owe plaintiff any money. The witness refused to provide details on his contention that there was no debt owing to plaintiff, claiming his Fifth Amendment privilege. Plaintiff contends that the privilege, by virtue of Hsu's answers to the foregoing questions, has been waived.

An early discussion of the problem of waiver is found in McCarthy v. Arndstein, 262 U.S. 355, 359–360, 43 S.Ct. 562, 67 L.Ed. 1023 (1923). According to that decision, "where the previous disclosure by an ordinary witness is not an actual admission of guilt or incriminating facts, he is not deprived of the privilege of stopping short in his testimony whenever it may fairly tend to incriminate him." Id. 262 U.S. 355, at 359, 43 S.Ct. 562, at 563, 67 L.Ed. 1023. In reaching this conclusion, the Court cited People ex rel. Taylor v. Forbes, 143 N.Y. 219, 38 N.E. 303, for the proposition that a "witness by answering questions exonerating himself in general terms from all connection with a criminal transaction, does not thereby waive his right to remain silent when it is thereafter sought to draw from him circumstances which might form another link in the chain of facts capable of

3. On the other hand, it is not clear to this court how defendant could be prejudiced by answering whether he is presently under indictment. Inasmuch as that fact is known to plaintiff and proof on that matter has been submitted to this court by plaintiff, it would be futile to require answer of that question.

being used to his peril." Id. 262 U.S. at 359, 43 S.Ct. at 563.

The Supreme Court, in Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951), considered the problem of waiver and the scope of waiver in connection with a criminal proceeding. Petitioner in that action denied having possession of the membership lists and dues records of the Communist Party of Denver, Colorado, but testified that she had turned the records over to another. Initially, petitioner refused to identify this person who had received the records without relying on the privilege against self-incrimination but later interposed the privilege as a defense. The Court stressed that where incriminating facts have been voluntarily revealed, the privilege cannot be invoked to prevent disclosure of the details. The Court affirmed petitioner's conviction for contempt on the ground that petitioner had waived her privilege by admissions that she was an official of the Denver Communist Party.

In Brown v. United States, 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958), rehearing denied, 356 U.S. 948, 78 S.Ct. 776, 2 L.Ed.2d 822 the decision was that by taking the stand and testifying in her own behalf, petitioner in a denaturalization proceeding waived the right to invoke the privilege against self-incrimination on cross-examination in regards to matters made relevant by her direct examination. Petitioner had claimed, on the authority of McCarthy v. Arndstein, supra, that pretrial disclosures and denials, not amounting to incriminating testimony, did not waive the privilege in a civil proceeding. The Court, agreeing with petitioner that her testimony was not incriminating but emphasizing the voluntariness of her testimony and the demands of a fair trial (where adequate cross examination is imperative), ruled that petitioner could be compelled to answer.

■ Plaintiff contends that Hsu waived the privilege against self-incrimination by testifying about the promissory notes and by testifying that he did not presently owe money to plaintiff. But it cannot be said, logically or practically, that disclaimer of a debt is related either to inquiries concerning Hsu's actions in concert with others to defraud plaintiff or to misrepresentations of his intentions to invest sums of monies in Video Medical Electronics Corp. Consequently, this court finds that Hsu did not waive his privilege against self-incrimination. This is the Fifth Amendment under discussion and waiver will not lightly be inferred. Smith v. United States, 337 U.S. 137, 151, 69 S.Ct. 1000, 93 L.Ed. 1264 (1949). See Miranda v. State of Arizona, supra, 384 U.S. at 475, 86 S.Ct. 1602, in ftn. distinguishing Rogers v. United States, supra. As required by the Supreme Court's admonitions, this court will construe the Fifth Amendment privilege so as to uphold the right which it was designed to protect. Hoffman v. United States, supra.

The disposition made of the principal part of this motion leads to a similar denial of the request that the examination of plaintiff by Hsu be stayed pending the time when Hsu has answered the questions which he refused to answer in his deposition.

■ Though Hsu has now been convicted, it does not automatically follow that the questions presented here will not incriminate him. The issues raised are not yet moot since appeal may bring about a new trial. The motion is denied in its entirety.