**MOVIELAB, INC., Plaintiff,**

v.

**BERKEY PHOTO, INC., Berkey-Pathe, Inc., Berkey-Pathe 45th Street Lab, Inc., Berkey-Pathe Opticals, Inc. and Berkey Photo Service, San Francisco, Inc. (Berkey-Pathe Hollywood Division), Defendants.**

**No. 70 Civ. 3800.**

United States District Court, S. D. New York.

Dec. 23, 1970.

Wachtell, Lipton, Rosen & Katz, New York City, for plaintiff; Herbert M. Wachtell, Peter D. McKenna, and Steven M. Barna, New York City, of counsel.

Parker, Chapin & Flattau, New York City, for defendants; Alvin M. Stein, and Joel M. Wolosky, New York City, of counsel.

MANSFIELD, District Judge.

In this suit by a maker of promissory notes ("Movielab") against the payees ("Berkey") alleging fraud in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b–5 thereunder, and seeking damages and rescission, defendants Berkey have moved pursuant to Rule 12, F. R.Civ.P., for dismissal of the complaint for lack of jurisdiction, or, in the alternative, for a stay of this action pending determination of another suit between the parties in the Supreme Court of the State of New York for New York County. For the reasons stated below, the motion is denied.

The essential facts are that by agreement dated June 27, 1967, Movielab agreed to purchase from Berkey certain assets consisting of film processing and optical businesses, issuing in payment therefor two 8% installment promissory notes in the amount of $5,250,000 each, payable over a period of 20 years in 240 equal monthly installments, and one shorter term note in the sum of $4,-178,312. On June 2, 1970, the parties modified the agreement in certain respects. Thereafter Movielab failed to make payments due on the notes and on August 25, 1970, Berkey gave notice of its election to accelerate payment of the full amount of the notes. When settlement negotiations failed, both sides simultaneously instituted suits against

each other on September 1, 1970, Berkey bringing suit on the notes in the New York County Supreme Court, and Movielab instituting the present action here, the actions being commenced within an hour of each other. Movielab has moved to dismiss the state court suit, or, in the alternative, to stay that proceeding pending disposition of this case.

The complaint here alleges that Berkey induced Movielab to make and deliver the notes in exchange for the assets by various false representations and concealment of certain material facts (e. g., the price Berkey had paid for the assets being sold to Movielab; the extent of losses that had been suffered; the status of the assets and equipment; and Berkey's relationships with customers), with the result that Movielab was unable efficiently to use the assets acquired from Berkey and suffered heavy losses.

### The Motion to Dismiss

Berkey contends that we lack subject matter jurisdiction under § 10(b) of the Exchange Act, which prohibits fraud "in connection with the purchase or sale of any *security*" (emphasis added), for the reason that the notes issued by Movielab did not constitute a "security" but were merely an individual loan of the type not encompassed within the prohibitions of the federal securities laws.

■ At first blush we were much attracted to Berkey's position. The primary purpose behind the adoption of the antifraud provisions of the 1933 and 1934 Acts was to protect public investors against fraud in the sale of securities of the type normally offered in the market place. See, e. g., SEC v. W. J. Howey Co., 328 U.S. 293, 301, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946); SEC v. C. M. Joiner Leasing Corp., 320 U.S. 344, 351, 64 S.Ct. 120, 88 L.Ed. 88 (1943). If instruments used in every private loan transaction qualified as securities under the federal statutes, our jurisdiction could be invoked with respect to any claim of fraud in connection with the issuance of a check or note, no matter how small the transaction (e. g., the

purchase of an automobile or refrigerator), provided the mails or some other instrumentality of interstate commerce were used. Furthermore, the maker of the note or check as well as the payee would be entitled to sue. We do not view this as the type of situation that prompted the enactment of the federal securities laws.

■ Upon turning to § 3(a) (10) of the 1934 Act, however, we find that it provides, in unequivocal and all-embracive language, that "The term 'security' means *any note* * * * but shall not include * * * any note * * * which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited." (Emphasis added). This plain language, literally read, clearly includes promissory notes of the type that are the subject of the present suit. In interpreting the statute we are guided by well recognized basic principles.

"There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning." [Footnotes omitted] (United States v. American Trucking Assns., Inc., 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940))

"For the ultimate question is what has Congress commanded, when it has given no clue to its intentions except familiar English words and no hint by the draftsmen of the words that they meant to use them in any but an ordinary sense. * * * After all, legislation * * * is addressed to the common run of men and is therefore to be understood according to the sense of the thing, as the ordinary man has a right to rely on ordinary words addressed to him." (Addison v. Holly Hill Fruit Prods., Inc., 322 U.S.

607, 617–618, 64 S.Ct. 1215, 1221, 88 L.Ed. 1488 (1944))

"The plain meaning of the words of the act covers this use. No single argument has more weight in statutory interpretation than this." (Browder v. United States, 312 U.S. 335, 338, 61 S.Ct. 599, 601, 85 L.Ed. 862 (1941))

There is no ambiguity in the language of § 10(b). Nor does a literal reading of the language defeat or hamper Congress' apparent purpose. We cannot therefore say that Congress did not intend to exercise its power to legislate with respect to fraud in the issuance of promissory notes of the type here involved.

Try as we may, we fail to detect in the 1934 Act any grant of discretionary power to the court to construe the term "security" as including certain types of notes but not others. Congress apparently decided that it would pass a sweeping prohibition rather than attempt to draw such distinctions. We are bound by that decision.

Other courts have reached the same conclusion, holding that the issuance of a promissory note as part of a private commercial transaction constitutes the "sale" of a security within the meaning of the anti-fraud provisions of both the 1933 and 1934 Acts. Llanos v. United States, 206 F.2d 852 (9th Cir. 1953), cert. denied, 346 U.S. 923, 74 S.Ct. 310, 98 L.Ed. 417 (1954); Lehigh Valley Trust Co. v. Central National Bank of Jacksonville, 409 F.2d 989, 991–992 (5th Cir. 1969); Prentice v. Hau, 280 F. Supp. 384 (S.D.N.Y.1968); SEC v. Vanco, Inc., 166 F.Supp. 422, 433 (D.N.J. 1958); Olympic Capital Corp. v. Newman, 276 F.Supp. 646, 653 (C.D.Calif. 1967); Whitlow & Associates, Ltd. v. Intermountain Brokers, Inc., 252 F.Supp. 943, 947–948 (D.Hawaii 1966). In Lehigh Valley Trust Co. v. Central National Bank of Jacksonville, *supra*, for instance, the established construction of § 10(b) of the 1934 Act was recently summarized by the Fifth Circuit as follows:

"The Act [Securities Exchange Act of 1934] provides that 'the term "security" means any note * * * or any certificate of interest or participation in * * * any of the foregoing.' 15 U.S.C.A. § 78c(a) (10). Moreover, this definition of a security has been literally read by the judiciary to the extent that almost all notes are held to be securities. Llanos v. United States, 9 Cir. 1953, 206 F.2d 852, cert. denied, 1954, 346 U.S. 923, 74 S.Ct. 310, 98 L.Ed. 417; Prentice v. Hsu, S.D.N.Y.1968, 280 F.Supp. 384, 386; Olympic Capital Corp. v. Newman, C.D.Cal.1967, 276 F.Supp. 646, 653; Whitlow & Associates, Ltd. v. Intermountain Brokers, Inc., D.Hawaii 1966, 252 F.Supp. 943, 947–948; S. E. C. v. Gulf Intercontinental F. Corp., S.D.Fla.1963, 223 F.Supp. 987, 994; S. E. C. v. Addison, N.D.Tex. 1961, 194 F.Supp. 709, 721; Bromberg Fraud: SEC rule 10b–5 § 4.6 (1968); contra, Beury v. Beury, S.D.W.Va. 1954, 127 F.Supp. 786, 789." (409 F. 2d pp. 991–992)

Attempts to distinguish the above decisions on the grounds that they involved sale of a large number of notes (e. g., Llanos v. United States, *supra*) or a series of notes (e. g., Prentice v. Hsu, *supra*), or sale of notes to a large number of people (e. g., SEC v. Vanco, Inc., *supra*) are unpersuasive. None of the courts based their decisions on such grounds. To hold that the applicability of § 10(b) turns upon the number of instruments or number of investments in each case would pose problems far more complex than deciding the meaning of the more ambiguous term "public offering" of securities. See SEC v. Ralston Purina, 346 U.S. 119, 73 S.Ct. 981, 97 L.Ed. 1494 (1952). Furthermore, it must be conceded that notes of the type issued here are frequently discounted, purchased for investment, hypothecated, or otherwise made the subject of dealings in the market place.

In support of the motion Berkey relies principally upon two decisions, SEC v. Fifth Avenue Coach Lines, Inc., 289 F. Supp. 3 (S.D.N.Y.1968), and Beury v. Beury, 127 F.Supp. 786 (S.D.W.Va.

1954). In neither of these cases, however, did the court discuss the fact that § 3(a) (10) of the 1934 Act defines "security" to mean "any note." Although notes were apparently issued in *Fifth Avenue*, the court referred to the question of whether a "personal loan" rather than a "note" was purchased or sold; and it does not appear whether the loan in *Beury* was evidenced by a note.

The other decisions relied upon by Berkey are inapposite since they do not refer to the term "note" as used in the 1934 Act but to the essential elements of entirely different kinds of securities, such as investment contracts. See, e. g., SEC v. C. M. Joiner Leasing Corp., *supra*; SEC v. W. J. Howey Co., *supra*; Tcherepnin v. Knight, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967).

*The Motion for a Stay*

█ Since both the state and federal actions were instituted simultaneously (within an hour of each other), we are not faced with a situation where one suit has progressed so far that a stay of that suit would work a serious hardship on the party who had prosecuted it. Our principal inquiry, therefore, should be as to whether all of the issues can be disposed of in one jurisdiction but not in the other. If so, in the interest of avoiding multiplicity and of promoting efficiency and economy of effort, the parties should be encouraged to resort to the forum where the entire controversy can be resolved.

██ It does not appear that all of the issues would necessarily be resolved, and judgments rendered accordingly, in the New York County Supreme Court, where Berkey has brought suit against

Movielab on the notes. Assuming that Movielab attempts to assert the alleged federal securities laws violations as defenses and counterclaims in that proceeding, the state court's jurisdiction would be challenged upon the basis of § 27 of the Exchange Act, which expressly confers exclusive jurisdiction upon federal district courts over suits based upon alleged violations of the Act or rules issued thereunder.[1] Although the state court might assume jurisdiction over a defense based on violation of the Exchange Act, Myer v. Shields & Co., 25 A.D.2d 126, 267 N.Y.S.2d 872 (1st Dept.1966), but see contra, Reuben Rose & Co., Inc. v. Davon Associates, Ltd. (N.Y.Co.1967) '67–'69 CCH Fed.Sec.L. Rep. ¶ 92,109, it would not have the power to adjudicate Movielab's affirmative claims for relief based upon violation of the Exchange Act. Furthermore, assuming that the alleged Exchange Act violations could be adjudicated by the state court as defenses to Berkey's suit there, that adjudication could at most operate as a collateral estoppel to the extent of any specific findings of fact.[2] Lyons v. Westinghouse Electric Corp., 222 F.2d 184 (2d Cir.), cert. denied, 350 U.S. 825, 76 S.Ct. 52, 100 L. Ed. 737 (1955); Abramson v. Pennwood Investment Corp., 392 F.2d 759 (2d Cir. 1968); see Cream Top Creamery v. Dean Milk Co., 383 F.2d 358 (6th Cir. 1967); Mach-Tronics, Inc. v. Zirpoli, 316 F.2d 820 (9th Cir. 1963); Boothe v. Baker Industries, Inc., 262 F.Supp. 168 (D.Del.1966). Thus state court findings of fact adverse to Movielab with respect to its § 10(b) defense might preclude its successful prosecution of its suit here. However, even with favorable state

---

1. "The district courts of the United States, * * * shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder." (§ 27)

2. To the extent that common law fraud might be asserted as an affirmative de-

fense in the state court suit, its elements would differ from those of a claim based upon violation of § 10(b). Claims arising under the Securities Act, for example, do not require the same degree of intent to defraud or the justification for reliance found in common law fraud. See List v. Fashion Park, Inc., 340 F.2d 457, 462, 463 (2d Cir. 1965); Weber v. C.M.P. Corp., 242 F.Supp. 321 (S.D.N.Y.1965).

court findings it would still be required to prosecute its suit here as to at least some of the issues (e. g., damages) in order to recover upon its affirmative claim. Cf. Kahan v. Rosenstiel, 285 F. Supp. 61, 63 (D.Del.1968).

The pendency of the state court suit, therefore, does not offer a valid basis for precluding plaintiff from prosecution in this court of its affirmative claim for rescission and damages, relief which it cannot obtain in the state court because of our exclusive jurisdiction over affirmative claims based on the Exchange Act. In this basic respect the decision of Aetna State Bank v. Altheimer, 430 F.2d 750 (7th Cir. 1970), relied upon by Berkey, is distinguishable from the present case. In that case the same party, Aetna, instituted both the state and federal suits. Since it sought the same relief in both courts—$93,700 damages—a state court judgment in its favor would in effect render its federal suit moot.

Overburdened as this court is with a plethora of litigation, we must concede that, unlike the state court, we are in a position to adjudicate all claims between the parties, since Berkey's claim for nonpayment of the notes must be asserted as a counterclaim in this suit, Rule 13, F.R.Civ.P., and we have no doubt that the trial judge would protect Berkey against any possible inference that the counterclaim was belated by pointing out that Berkey had simultaneously brought suit in the state court against Movielab and then asserted its claim here as a counterclaim. Under such circumstances the guiding principles are clear:

> "It has long been recognized that when a federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction. [Citations omitted] It has also been considered to be the rule that when a federal court is presented with a case of which it has cognizance it may not turn the matter over for adjudication to the state court, and that the pend-

ency of an action in the state court is no bar to the proceedings concerning the same matter in the federal court. McClellan v. Carland, supra, 217 U.S. [268] pp. 281–282, 30 S.Ct. 501 [54 L.Ed. 762]." (316 F.2d 820 at 824 (9th Cir. 1953))

 In short, where both state and federal suits are simultaneously brought and all claims can be fully adjudicated in the federal court, whereas serious doubt exists as to the extent which the federal claims could be adjudicated in the state court proceeding, we are not justified in staying the federal suit.

The motion is denied. It is so ordered.