CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND, an Illinois Trust, et al., Plaintiffs-Appellees,

and

Claude Carpenter and James Adcock, Individually and on behalf of all members and beneficiaries of Central States, Southeast and Southwest Areas Health and Welfare Fund, an Illinois Trust, Proposed Intervenors-Appellants,

v.

OLD SECURITY LIFE INSURANCE COMPANY, a corporation, et al., Defendants-Appellees.

Nos. 78–2232, 78–2287.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 24, 1979.

Decided June 12, 1979.

Lawrence Walner, Sidney Z. Karasik, Chicago, Ill., for proposed intervenors-appellants.

James L. Coghlan and Mairen C. Kelly, Gary M. Elden, Reuben & Proctor, Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, MARKEY, Chief Judge,* of the Court of Cus-

* The Honorable Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, is sitting by designation.

toms and Patent Appeals, and SPRECHER, Circuit Judge.

MARKEY, Chief Judge.

These consolidated appeals rise out of complex litigation occasioned by alleged waste of assets and mismanagement of the Central States, Southeast and Southwest Areas Health and Welfare Fund (Fund).[1] Before us are two different orders of the district court, each denying a motion.

In appeal No. 78–2287, defendant Old Security Life Insurance Company (Old Security) appeals the denial of its motion to dismiss. We dismiss that appeal for lack of jurisdiction.

In appeal No. 78–2232, Claude Carpenter and James Adcock (Beneficiaries), individually and on behalf of all Fund members and beneficiaries, appeal the denial of their motion to intervene. We reverse.

### General Background

On August 4, 1976, the Fund, through its former trustees, brought suit in the district court against Old Security and sixty other defendants, including appellee Continental Illinois National Bank and Trust Company of Chicago (Continental), to recover $7 million in Fund assets, allegedly diverted and misappropriated by defendants' insurance fraud conspiracy. Prior to the filing of a second amended complaint, the former trustees were required to resign. New trustees filled the vacancies and were substituted as plaintiffs.

The Fund's second amended complaint charged the sixty-one defendants with breach of contract, fraud, conspiracy, and breach of fiduciary duty under state law, and with breach of statutory duties as fiduciaries under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (1976) (ERISA). It alleged that the

Fund contracted with Old Security for insurance benefits to Fund members; that at that time Old Security failed to inform the Fund of Old Security's feeble financial condition; that the Fund transferred $7 million in premiums to Old Security; that Old Security defaulted on the contract because of its financial condition; that the failure to inform and default were part of a complex scheme in which defendants conspired to defraud the Fund of $7 million, all of which was misappropriated, diverted, and wasted by defendants.[2] Old Security and various other defendants filed counterclaims and third-party claims charging trustees, officers, and agents of the Fund with complicity or actual participation in the scheme to defraud.

Because the issues are unrelated, the appeals must be separately treated.

### Appeal No. 78–2287—The Motion to Dismiss

#### Background

In October, 1977, the Missouri Director of Insurance, Jerry B. Buxton (Buxton), petitioned the Circuit Court of Cole County, Missouri (Missouri court), for an order placing Old Security in receivership. *Buxton v. Old Security Life Insurance Co.*, No. 29686 (Cir.Ct., Cole Cty., Mo., filed Oct. 1977) (Missouri insolvency proceeding). Buxton proceeded under Section 375.560 of the Missouri Insurance Act, Mo.Rev.Stat. § 375.560, authorizing receivership of domiciliary insurance companies for rehabilitation or liquidation.[3]

By order of October 20, 1977, the Missouri court adjudged Old Security insolvent, appointed Buxton receiver, and authorized him to rehabilitate Old Security and to otherwise act in protection of Old Security's

---

1. An employee benefit plan for certain members of the International Brotherhood of Teamsters (Union).

2. The second amended complaint also specifically charged Continental with breach of fiduciary duty and negligence in the transfer of $1.5 million of the $7 million sum to an unauthorized signator.

3. The Missouri statutory procedures for insolvent insurance companies, Mo.Rev.Stat. § 375.-950–.990, are those of the Uniform Insurers Liquidation Act, adopted by thirty-two states.

remaining assets.[4] The order included this (Missouri injunction):

> 11. All persons are enjoined and restrained from prosecuting or bringing any action, issuing any process or obtaining any judgment against the defendant, Old Security Life Insurance Company, or its properties or assets, except pursuant to the order of this Court.

It was after issuance of the Missouri injunction that the Fund filed its second amended complaint and moved for preliminary injunctions in the district court against Old Security. The Fund did not seek permission of the Missouri court and made no attempt to obtain modification of the Missouri injunction.

On December 27, 1977, Old Security moved to dismiss, arguing that further proceedings in the federal action were barred by the Missouri injunction. On September 1, 1978, the district court denied the motion,[5] stating:

> Old Security also urges this court to abstain from taking jurisdiction over this controversy because it is now under liquidation or rehabilitation by defendant Jerry Buxton, the court-appointed receiver in Missouri. That court has enjoined any suits against Old Security by its order entered October 20, 1977. However, E.R.I.S.A. confers upon Federal courts exclusive jurisdiction over employee health and welfare funds, except that a beneficiary is given the right to file a civil action in a State court to enforce his claims and for similar purposes. We therefore have a "virtually unflagging obligation" to retain and exercise jurisdiction over Old Security. See *Will v. Calvert*, [437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504] 46 U.S.L.W. 4811, 4813 (1978).

*Colorado River Water Conservation District v. United States*, 424 U.S. 800 [96 S.Ct. 1236, 47 L.Ed.2d 483] (1976) does not support defendant's argument for abstention. No difficult or unusual question of state law has been raised. To the contrary, all three counts involve questions of Federal law which, as we have held, are exclusively under our jurisdiction in this particular instance.

We do not overlook the holding in *Blackhawk Heating & Plumbing Co., Inc. v. Geeslin*, 530 F.2d 154 (7th Cir. 1976), a diversity case where the State court had obtained jurisdiction over the *res*. In that situation, it was held that the Federal court should not simultaneously proceed with liquidation of the *res*, particularly when a domestic insurance company is involved. However, when the Federal suit is proceeding *in personam*, we see no reason why we should not proceed simultaneously with the State court liquidation proceedings. *Koller v. Richmond Industrial Loan and Thrift*, 407 F.Supp. 1211 (E.D.Va.1975).

The other arguments raised by Old Security for dismissal have been considered and found wanting. We will merely refer specifically only to 29 U.S.C. § 1144(b)(2)(A) which provides that:

> . . . Nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance . . . .

To what extent plaintiffs may be bound by Missouri law we are not called upon to decide. They are entitled to bring an action to enforce alleged obligations under E.R.I.S.A., while at the same time Old Security is bound by the laws of the State of Missouri under the foregoing statutory provision.

---

4. At the time of oral argument, Old Security was in receivership for rehabilitation. On February 22, 1979, Buxton petitioned the Missouri court for liquidation. The petition was granted May 15, 1979.

5. The September 1, 1978 decision also disposed of motions to dismiss Continental and Buxton. Buxton was dismissed because his being a receiver did not make him a fiduciary under ERISA. Continental did not appeal the denial of its motion. In addition to considering the Missouri injunction, the district court also concluded that Old Security was an ERISA fiduciary. Old Security's appeal being based solely on the Missouri insolvency proceeding and the Missouri injunction, we express no view on whether a life insurance company is generally a fiduciary under ERISA with respect to payments made to it by an employee benefit plan.

As the basis for jurisdiction in this appeal, Old Security relies on the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

### Issue

The dispositive issue is whether the district court's order denying the motion to dismiss is an appealable collateral order under *Cohen*.

### OPINION

Jurisdiction of Appeals from "final decisions," 28 U.S.C. § 1291 (1976), includes jurisdiction of final "collateral orders," described in *Cohen* as "that small class which finally determines claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." 337 U.S. at 546, 69 S.Ct. at 1225. *Cohen* was a stockholders' derivative suit, with jurisdiction based solely on diversity. Defendant corporation, entitled to do so under the law of the forum state, moved to require plaintiff to post security for defendant's costs, including attorneys' fees, and appealed the denial of that motion. The court saw "a serious and unsettled question," 337 U.S. at 547, 69 S.Ct. 1221, in whether federal courts in diversity cases must apply the state statute on posting security.

To be final and appealable, therefore, a collateral order must raise an important and unsettled question of law, the question must be separable from the merits, and delay in its resolution must result in an irretrievable loss of rights. We conclude that the denial of Old Security's motion to dismiss is not a final and appealable collateral order and that this court is, therefore, without jurisdiction.

Though Old Security variously described an alleged important and unsettled question of law in the briefs [6] it became clear at oral argument that the only question relied on by Old Security is whether it is an abuse of discretion not to abstain in this in personam [7] action alleging violation of a federal statute. Abstention, says Old Security, is required in view of the Missouri injunction

6. Old Security does not now assert that the important question supporting appealability is whether a federal court *must* dismiss an in personam action when a state court has enjoined all actions against the defendant.

In *Donovan v. Dallas*, 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964), the Supreme Court recognized "the old and well-established judicially declared rule that state courts are completely without power to restrain federal-court proceedings in *in personam* actions . . . ." *Id.* at 412–13, 84 S.Ct. at 1582 (footnote omitted). And in the more recently decided case of *General Atomic Co. v. Felter*, 434 U.S. 12, 98 S.Ct. 76, 54 L.Ed.2d 199 (1977), the court said that "[i]t is therefore clear from *Donovan* that the rights conferred by Congress to bring *in personam* actions in federal courts are not subject to abridgment by state-court injunctions, regardless of whether the federal litigation is pending or prospective." *Id.* at 17, 98 S.Ct. at 78 (footnote omitted).

7. Old Security contends that, although technically in personam, this federal action has substantial in rem aspects.

If this federal action were in rem, it would present a very different situation. *Blackhawk Heating & Plumbing Co., Inc. v. Geeslin*, 530 F.2d 154 (7th Cir. 1976) involved state and federal proceedings, both in rem. An Illinois court placed a domestic insurance company in liquidation. Blackhawk petitioned the federal court to turn over certain securities. This court held that "since the Illinois court had already acquired control over the securities . . . at the time Blackhawk filed its turnover petition, the federal court lacked power to exercise control over that property. That property had been removed from the *in rem* jurisdiction of all other courts." *Id.* at 159. A federal court which first acquires in rem jurisdiction of a suit to liquidate is obliged to relinquish jurisdiction to permit administration of the affairs of the insolvent under the state's statutory receivership plan. *Pennsylvania v. Williams*, 294 U.S. 176, 185–86, 55 S.Ct. 380, 79 L.Ed. 841 (1935).

However, the Fund's second amended complaint seeks to enforce a personal liability and obtain a money judgment, not to obtain possession of a res. Old Security describes injunction motions by the Fund as demanding in rem relief. Nothing of record indicates that the district court granted those motions or any in rem relief. The district court is fully capable of preventing inappropriate conversion of the suit to a proceeding truly in rem.

against prosecution of claims outside the insolvency proceeding.

The issue presents neither a legal question of first impression nor one unsettled. In *McGough v. First Arlington National Bank*, 519 F.2d 552 (7th Cir. 1975), the district court had stayed a federal securities claim pending resolution of related state court proceedings. This court stated:

> [I]t is manifest to us that the exclusive remedy sought under the complaint in the District court is not available to McGough in the state action. Therefore, we conclude that the District Court's stay order was an abuse of judicial discretion and reversible error, since it relegated McGough to a sterile state court for vindication of its federal remedies.

■ That the federal courts have exclusive jurisdiction over ERISA claims for breach of fiduciary duty is settled. *Morrissey v. Curran*, 567 F.2d 546, 549 (2d Cir. 1977); *Marshall v. Chase Manhattan Bank National Association*, 558 F.2d 680, 682 (2d Cir. 1977). Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1),[8] provides that the federal district courts have exclusive jurisdiction of civil actions brought by a participant or beneficiary, and section 514(a), 29 U.S.C. § 1144(a),[9] preempts all state laws relating to employee benefit plans covered by the statute.

■ Though a state court may decide federal questions, *e. g.*, an affirmative defense based on federal statute, the concern here is with affirmative relief. Exclusive federal jurisdiction being present, only the federal courts have power to provide that affirmative relief. *McGough v. First Arlington National Bank, supra* at 555; *Movielab, Inc. v. Berkey Photo, Inc.*, 321 F.Supp. 806 (S.D.N.Y.1970), *aff'd*, 452 F.2d 662 (2d Cir. 1971).

With no prejudgment on the merits of the case, we conclude that the question of law relied on by Old Security is not so unsettled as to justify appeal at this time under *Cohen*.

■ If there were doubt of the absence of an important and unsettled question, that doubt would not aid Old Security in view of its failure to establish a *Cohen* -type irretrievable loss of rights. The right otherwise irretrievably lost in *Cohen* was specific. There the state statute provided for security for defendant's costs and attorneys' fees, and the question was whether a federal court exercising diversity jurisdiction was to apply that statute. The "right" here asserted by Old Security is not the sort present in *Cohen*,[10] nor would its loss be the sort there viewed as incapable of vindication on appeal from final judgment. Dismissal of its appeal means that Old Security will "suffer" only in undertaking the ex-

---

**8.** 29 U.S.C. § 1132(e)(1) provides:

(e)(1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.

Subsection (a)(1)(B) covers only the recovery or clarification of benefits due under a particular plan and is not relevant here, where the ERISA claim is based on breach of fiduciary duty.

**9.** 29 U.S.C. § 1144(a) provides:

(a) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

**10.** Old Security admits that the district court is not obligated to honor the Missouri injunction, *see* note 6 *supra*, but says the court should exercise its discretion to abstain. Under *McGough v. First Arlington National Bank, supra*, however, abstention would be an abuse of discretion, and the presence of discretion would militate against Old Security's effort to invoke *Cohen*. In *Cohen* the statute, from which the right there involved was derived, was either constitutional and applicable under the *Erie* doctrine, or it was not. There was no room for discretion. The Court in *Cohen* noted that "[i]f the right were admitted or clear and the order involved only an exercise of discretion as to the amount of security . . . appealability would present a different question." 337 U.S. at 547, 69 S.Ct. at 1226.

pense of defending itself in this action. Enforcement of a state statute for a bond, covering potential reimbursement of the cost of a lawsuit, is not equatable with a holding that incurrence of litigation costs constitutes irreparable harm. That view would render appealable every denial of a motion to dismiss. One may not invoke *Cohen* on the basis of a "right" not to have to litigate at all. *EEOC v. American Express Co.*, 558 F.2d 102, 104 (2d Cir. 1977); *United States Tour Operators Association v. Trans World Airlines, Inc.*, 556 F.2d 126, 129 (2d Cir. 1977).

■ Non-existent rights cannot be "lost," and Old Security has no right to enforce the Missouri injunction. Even the state courts have no such right in relation to federal in personam actions. *Donovan v. Dallas, supra* note 6, 377 U.S. at 413, 84 S.Ct. 1579.

■ Finally, Old Security relies upon its "right" to a single liquidation forum, analogizing the Bankruptcy Act, 11 U.S.C. § 1 *et seq.* (1976), with the Missouri Insurance Act, Mo.Rev.Stat. § 374 *et seq.*, respecting receivership, rehabilitation, and liquidation of insolvents. Old Security begins by noting that the purpose of the Missouri injunction is to insure efficient, economic settlement of claims by preventing dissipation of assets in multiple, far-flung litigation, and that the same purpose is served for most corporations by the federal Bankruptcy Act provisions enjoining external prosecution of claims against bankrupts. 11 U.S.C. §§ 29, 516(4), 714. Old Security then says this case is governed by the Missouri insolvency proceeding only because it is an insurance company subject to state regulation under the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.* (1976),[11] and for whom the Bankruptcy Act is inapplicable, 11 U.S.C. § 22.

■ Protecting the integrity of state insurance insolvency proceedings, and concern for their freedom from outside interference, are of great importance. *Blackhawk Heating & Plumbing Co. v. Geeslin, supra* at 159. We conclude, however, that Old Security's assertion of a single-forum right cannot here prevail. The Uniform Insurers Liquidation Act (Act),[12] part of the Missouri Insurance Act, Mo.Rev.Stat. § 375.950–.990, does not itself create an exclusive single-state forum. The Act expressly authorizes separate claims proceedings in ancillary states, *i. e.*, in all states adopting the Act. Mo.Rev.Stat. § 375.958. Moreover, the Act cannot be interpreted as precluding a party from pursuing a congressionally created federal claim in the only courts able to provide affirmative relief on that claim.

We hold that the denial of Old Security's motion to dismiss is not a final "collateral order" justifying a deviation from the final judgment rule of 28 U.S.C. § 1291.

### Conclusion

Old Security's appeal from the denial of its motion to dismiss, appeal No. 78–2287, is dismissed for lack of appellate jurisdiction.

### *Appeal No. 78–2232—The Motion to Intervene*

### *Background*

On May 1, 1978, the Beneficiaries filed a motion to intervene and an intervention

---

11. 15 U.S.C. § 1012 provides in pertinent part:
      (a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
      . . .
      (b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business unless such Act specifically relates to the business of insurance . . . .

12. Section 3 of the Uniform Insurers Liquidation Act provides in pertinent part:

In any delinquency proceeding begun in this state against a domiciliary insurer of this state, claimants residing in a reciprocal ancillary state may file claims either with the ancillary receiver, if any, or with the domiciliary receiver. . .

In any such proceeding controverted claims belonging to claimants residing in ancillary states may either (a) be proved in this state as provided by law, or (b) if ancillary proceedings have been commenced in such ancillary state, may be proved in such ancillary proceedings. . . .

complaint, of which counts III and V correspond essentially to counts I and III of the Fund's second amended complaint, counts I and IV are asserted against the present trustees, former trustees, Old Security, the Fund administrator, and others, and count II is asserted against the present trustees and the administrator. All counts allege violations of ERISA.

When the Beneficiaries filed their motion to intervene, they brought a separate action, in the same district court, based on the same allegations as those in their intervention complaint. *Carpenter v. Fitzsimmons*, No. 78 C 1672 (N.D.Ill., filed May 1, 1978). On April 19, 1979, while this appeal was pending, the district court denied the Beneficiaries' motion to consolidate the two actions for purposes of discovery.

Claiming intervention as a matter of right under Fed.R.Civ.P. 24, the Beneficiaries alleged that the motion was timely filed; that they have a substantial interest in the subject matter of the litigation; that disposition of the underlying action would impair or impede their ability to protect that interest; and that their interest is not being adequately represented.

Respecting inadequacy of representation, the Beneficiaries alleged that the present trustees have a community of interest with the former trustees, with Old Security, and with other defendants, rendering the suit collusive in nature. It is asserted that the former trustees' choice of Old Security, a company financially infirm and inexperienced in the relevant field of insurance, over unquestionably sound insurance companies, furthered a scheme to defraud the Fund; that the former and present trustees are intimately linked because the former

controlled their successors' selection; that, notwithstanding the clear involvement of the former trustees in a conspiracy to defraud the Fund, the present trustees failed to join their predecessors as defendants; and that the present trustees have evinced a pattern of inadequate, less than zealous, representation by failing to assert certain other claims arising from the circumstances.

On September 1, 1978, the district court denied the motion to intervene.[13] As indicated in a memorandum order, the court concluded that the present trustees are acting in the best interests of the Fund, though not taking every step desired by the Beneficiaries.

Respecting failure of the present trustees to intervene in Old Security's lawsuit against National American Life Insurance Company (NALICO), *Old Security Life Insurance Co. v. National American Life Insurance Co.*, Civ. No. 76–1910 (D.D.C.), the district court noted that the objective of the NALICO litigation was acquisition of assets for Old Security, making it more responsive to relief sought here by the Fund; that intervention of the Beneficiaries here would have no direct effect on the NALICO litigation; and that such effect could be achieved by intervention of the Beneficiaries in that case.

The court further concluded that the Beneficiaries' separate class action against the trustees was a means for obtaining relief against the trustees and would be a "window" for observing the present litigation, both actions being prosecuted simultaneously before the same judge.

The Beneficiaries appeal.[14] Only the present trustees and defendant Continental have responded.

13. On July 24, 1978, the Beneficiaries moved to disqualify the attorneys for the present trustees, alleging conflict of interest. In its September 1, 1978 order, the court stated that the motion to disqualify appeared premature because the alleged conflict is with the former trustees who are not yet parties. The court held the Beneficiaries without standing to disqualify, the motion to intervene being denied.

14. Unlike the companion appeal No. 78–2287, appealability has not been here questioned. The traditional rule is that an order denying intervention of right is unconditionally appealable. *Reedsburg Bank v. Apollo*, 508 F.2d 995, 997 (7th Cir. 1975).

*Issue*

The issue is whether the district court erred in denying the motion to intervene.[15]

## OPINION

To intervene of right under Fed.R.Civ.P. 24(a)(2), an applicant must: (1) timely apply, (2) claim "an interest relating to the property or transaction which is the subject of the action," (3) be "so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest . . . ," and (4) not be "adequately represented by existing parties."

On this appeal, the interest of the Beneficiaries is not challenged and appellees' assertion of untimeliness is without merit.[16]

Appellees argue, "that 'inadequate representation' requires a compelling showing of collusion *between the representative and an opposing party in the lawsuit* [citing cases]," and assert that the Beneficiaries have alleged no facts indicating collusion between the plaintiffs and any named defendants.[17]

■ All nonconclusory allegations supporting a motion to intervene are taken as true, absent sham, frivolity, or other objections. *Stadin v. Union Electric Co.*, 309 F.2d 912, 917 (8th Cir. 1962); *Clark v. San-*

*dusky*, 205 F.2d 915, 918 (7th Cir. 1953). The Beneficiaries have pleaded with specificity, in Count I of the intervention complaint, instances of collusion between the former trustees and the defendants, including:

1. Though Prudential Life Insurance Company is a nationally known insurer with unquestioned assets, and its bid was objectively superior to that of Old Security, the former trustees selected the relatively small, unknown, inexperienced-in-the-field company for a cost plus fee contract generating $20.4 million in premiums.

2. The former trustees gave advance confidential information of the solicitation to defendants or coconspirators acting on behalf of Old Security, employed insufficient and inadequate insurance consultants, and used consulting information slanted toward selection of Old Security.

3. Selection of Old Security rested on its willingness to continue using Amalgamated Insurance Agency as exclusive service agent. Amalgamated is controlled by Allan M. Dorfman, convicted of a felony, whose services were sought and continued despite statutory (ERISA, 29 U.S.C. §§ 1109 and 1111) and common law prohibitions.

4. The former trustees failed:

---

**15.** "A denial of an application for intervention by right which was timely filed . . . is subject to the usual scope of . . . appellate review over questions of law. An erroneous denial will be reversed." *United States v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826, 841 (5th Cir. 1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976) (citation omitted).

**16.** The district court stated:

This motion is resisted by the present plaintiffs and by the defendant Continental Illinois National Bank and Trust Company of Chicago as being both untimely and unnecessary within the intent of F.R.C.P. 24(a). We find that this opposition is well-founded at the *present* stage of the proceedings and therefore will deny the motion. [Emphasis added.]

The present trustees rely on the quoted statement as an express finding that the motion was untimely.

We disagree. The quoted reference to untimeliness merely cited the opponents' contentions. The only express findings in the court's memorandum are directed to adequate representation and necessity. The district court would not have decided on the merits if the motion had been untimely. Further, the court's statements that "this opposition is well-founded at the *present* stage of the proceedings," and that the "situation may change in the course of time, but *for the present* at least, the motion . . . is denied [emphasis added]," imply renewal; hence they represent an implicit finding that the instant motion was timely.

**17.** Appellees further argue that the present plaintiff-trustees have strong personal motives for succeeding against the present defendants, *i. e.*, avoiding personal liability for breach of fiduciary duty, and evading any need to sue the former trustees. The argument is unpersuasive in the face of the factual allegations of collusion in the record.

(a) To determine whether reinsurance was contemplated or necessary and the identity and financial position of proposed reinsurers.

(b) To retain the right to control designation of a reinsurer.

(c) To establish sufficient control over the account into which premiums were paid.

(d) To adequately investigate the successful bidder.

5. After problems of Old Security and jeopardy of the insurance program were public knowledge, the former trustees made a July, 1976 payment of $1,776,000 to Old Security.

The Beneficiaries have also specifically alleged in count I a relation between the present and the former trustees, asserting that the present trustees "were appointed under mechanism believed to be such as to permit the Former Trustees to directly or indirectly participate in or control or effect the appointment of the [present] Trustees or their tenure in office."

■■■ We find the Beneficiaries' material allegations to be nonconclusory.[18] There being no evidence of sham, frivolity, or other defects we must take those allegations as true. We therefore find in the Beneficiaries' complaint allegations sufficient to establish, prima facie, a case of collusion between the former trustees and the defendants, and a relationship the equal of collusion between the present and former trustees.

This suit was initiated by the former trustees, for whom the present trustees have been substituted. In considering the representation issue, the present trustees would have us treat their predecessors as strangers to the action, and would have us hold that alleged collusion must be direct collusion between the representative and an opposing party. That narrow view of the adequacy of representation question is required by neither the rule nor prior decisions of this court. Representation is either adequate or inadequate. Its character must be determined therefore on the facts presented. In *Clark v. Sandusky, supra* at 918, this court found inadequacy in light of a conspiracy between plaintiffs and a third party "wrongfully to appropriate and use [applicant's] property," and "injury to [applicant's] property by defendants as a consequence of this conspiracy."[19]

There is, moreover, a basic unattractiveness in the notion that inadequacy of representation cannot be shown when indirect collusion, a kind of "collusion once removed," is alleged and established. Factual allegations reflecting collusion between original representatives and a party, and reflecting control over substituted representatives in the hands of those original representatives, are sufficient in this case to indicate an inadequacy of representation.

The veil otherwise existing between the former and present representatives having been pierced by the allegation of their relationship, we find sufficient indication of collusion between the present trustees and defendants, through the former trustees, to warrant a grant of intervention as of right.[20]

The present trustees say the Beneficiaries' interests will not be impaired because

---

**18.** Count I, paragraph 8 of the Beneficiaries' complaint alleges that the present trustees "formed or participated in or later joined and ratified" a conspiracy to defraud the Fund. Being unsupported by specifics, that allegation is conclusory.

**19.** Collusion between a representative and a party evidenced inadequacy in *Cuthill v. Ortman-Miller Machine Co.*, 216 F.2d 336 (7th Cir. 1954). Some opinions have indicated that representation was adequate when no collusion is shown between a representative and a party, *United States v. Board of School Commissioners*, 466 F.2d 573 (7th Cir. 1972), *cert. denied,*

410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973); *Martin v. Kalvar Corp.*, 411 F.2d 552 (5th Cir. 1969); *Moore v. Tangipahoa Parish School Board*, 298 F.Supp. 288 (E.D.La.1969); *Peterson v. United States*, 41 F.R.D. 131 (D.C. Minn.1966), but, in those cases there were present no evidentiary bases for a finding of collusion, nor was there the basis for finding indirect collusion between a representative and a party present here.

**20.** In view of our holding, we do not reach the count II allegations relating to the present trustees' conduct of the litigation.

their counts III and V duplicate counts I and III of the trustees' second amended complaint, and the Beneficiaries' remaining counts duplicate the complaint in their separate action. We disagree. Because the present trustees do not adequately represent the Beneficiaries' interest, denial of intervention would be certain to "impair or impede" their ability to protect their interest respecting counts III and V of the intervention complaint. Respecting the other counts in the intervention complaint, and the Beneficiaries' separate action, we repeat this court's pronouncement in *Clark v. Sandusky, supra* at 919: "The right to intervene is not barred merely by the existence of another remedy. . . ."

### Conclusion

The Beneficiaries were entitled to intervene of right under Fed.R.Civ.P. 24. Accordingly, in Appeal No. 78–2232, we reverse the denial of the motion to intervene.