530 F.2d 154
 BLACKHAWK HEATING & PLUMBING COMPANY INC., Plaintiff and
Counterdefendant-Appellee,
v.
Joseph D. GEESLIN, Jr., Special Deputy Insurance
Commissioner of the State of Indiana for the
Liquidation of United Bonding Insurance
Company, Defendant and
Counterplaintiff-Appellant,
v.
BLACKHAWK HEATING & PLUMBING COMPANY, INC., and Harris Trust
& Savings Bank, an Illinois Corporation, Counterdefendants,
and
Robert D. Wilcox, Special Deputy Liquidator of Prudence
Mutual Casualty Company, Counterdefendant-Appellant.
 No. 75--1080.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 20, 1975.
Decided Feb. 6, 1976.
Rehearing and Rehearing En Banc
Denied March 15, 1976.
 
 Victor G. Savikas, Karon, Morrison & Savikas, Chicago, Ill., for appellant.
 Brian A. Loftus, Richard J. Brennan, Harry P. Lamberson, Chicago, Ill., for appellee.
 Before CLARK, Associate Justice, CASTLE, Senior Circuit Judge, and SWYGERT, Circuit Judge.
 CASTLE, Senior Circuit Judge.
 
 
 1
 The state court-appointed liquidators of two insurance companies appeal from a district court order that a bank turn over certain assets of one of the insurance companies, held by the bank pursuant to an escrow agreement between the two companies, to the appellee Blackhawk Heating & Plumbing Company, Inc. (hereinafter 'Blackhawk'). The appellants are Joseph D. Geeslin, Jr., Special Deputy Insurance Commissioner of the State of Indiana and the liquidator of United Bonding Insurance Company (hereinafter 'United'); and Robert D. Wilcox, Director of Insurance for the State of Illinois and liquidator of Prudence Mutual Casualty Company (hereinafter 'Prudence').
 
 I.
 
 2
 During the years of 1964, 1965, and 1966, Prudence and United entered into a series of reinsurance agreements. Under the terms of these agreements, United agreed to cede to Prudence a percentage of certain insurance bonds on which it became obligated and to pay Prudence a percentage of the premiums received. In order to secure United for monies due from Prudence on these agreements, the two entered into an escrow agreement whereby Prudence deposited securities with the Harris Trust & Savings Bank in Chicago, Illinois. The face value of these securities owned by Prudence was $296,000.00. The escrow agreement provided that the securities were to remain in escrow until such time as all losses on the insurance bonds subject to the reinsurance agreement were determined and discharged.[1]
 
 
 3
 In March of 1967, Blackhawk filed suit in federal district court against United to recover $400,000.00 on a performance bond issued by United to secure the performance of one of Blackhawk's subcontractors.[2] In August of 1969, Blackhawk amended its complaint by adding a second count seeking $600,000.00 in damages for United's violation of federal wiretap statutes. See 18 U.S.C. §§ 2510--2520 (1970).
 
 
 4
 While this litigation was pending, Prudence was ordered into conservatorship by the Circuit Court of Cook County, Illinois. On February 6, 1970, Prudence was placed into liquidation by the same court.
 
 
 5
 On December 2, 1970 Blackhawk and United entered into a settlement agreement concerning their litigation. The agreement provided that United would consent to the entering of a judgment against it in the amount of $360,000.00. The agreement further provided that this amount was to be satisfied by United's delivery of certain securities and cash, and assignment of its interest in $130,000.00 of the Prudence securities in the Harris escrow account. The district court entered judgment in the amount of $360,000.00.[3] United subsequently fulfilled its part of the agreement by delivering the cash and securities, and also by assigning its interest in $130,000.00 of the Harris escrow. Soon thereafter, on February 8, 1971, United was placed into liquidation by order of the Superior Court of Marion County, Indiana.
 
 
 6
 In order to recover the $130,000.00 in securities in the Harris escrow account which it claimed was due it because of Prudence's alleged default on its reinsurance agreements with United, Blackhawk filed a petition to turn over assets in federal district court. In this petition, Blackhawk asked the district court to order Harris to pay it $130,000.00 from the escrow plus a proportionate share of any appreciation in the fund.
 
 
 7
 United's liquidator, Geeslin, intervened on the ground that the escrow securities were still the property of Prudence and therefore subject only to the jurisdiction of the Illinois court overseeing Prudence's liquidation. Geeslin and Prudence's liquidator, Wilcox, moved to dismiss Blackhawk's petition for lack of jurisdiction over the subject matter of the action. The district court denied the motion. Geeslin and Wilcox thereupon filed answers to Blackhawk's petition contending that the assignment by United of its security interest in the Prudence securities constituted a voidable preference under Indiana law. Geeslin also contended that his rights to Prudence's securities as lien creditor of United were superior to Blackhawk's rights as assignee of United's security interest in the securities. In addition Geeslin counterclaimed for the return of the securities and cash which United had previously transferred to Blackhawk pursuant to the settlement agreement. He argued that these transfers also constituted voidable preferences under Indiana law.
 
 
 8
 After a lengthy trial, the district court decided the preference issue in favor of Blackhawk and held its rights to the escrow superior to Geeslin's. The court ordered Harris to pay Blackhawk $130,000.00 plus appreciation from the escrow account.
 
 
 9
 Geeslin and Wilcox appeal the district court's denial of their motion to dismiss and the court's determination that Blackhawk's rights to the escrow are superior to theirs. Since we are of the opinion that the district court lacked jurisdiction to entertain Blackhawk's turnover petition, we vacate the court's judgment and remand the case with instructions that the petition be dismissed.
 
 II.
 
 10
 This case presents a confrontation which is the natural by-product of our federal form of government. Two courts, one state and one federal, seek to exercise power over the same piece of property and order its final disposition. State liquidation proceedings against Prudence are pending in an Illinois court. In these proceedings, a state official has been appointed to oversee the winding up of Prudence's affairs and the final disposition of its assets. The state court vested title to all of Prudence's assets in this official pursuant to state law in order to facilitate the termination and settlement of Rpudence's business.[4] Rather than file a claim in these proceedings, Blackhawk, as assignee of United's rights in certain of Prudence's property, chose instead to file a petition in federal court to have that property turned over to it. A conflict thus arose between the jurisdiction of these two courts over control of this particular property.
 
 
 11
 Because such conflicts occur from time to time, the Supreme Court long ago fashioned jurisdictional rules to resolve them. In Penn General Casualty Company v. Pennsylvania, 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850 (1935), the Court stated:
 
 
 12
 (I)f the two suits are in rem or quasi in rem, requiring that the court or its officer have possession or control of the property which is the subject of the suit in order to proceed with the cause and to grant the relief sought, the jurisdiction of one court must of necessity yield to that of the other. To avoid unseemly and disastrous conflicts in the administration of our dual judicial system, and to protect the judicial processes of the court first assuming jurisdiction, the principle, applicable to both federal and state courts, is established that the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other. (Id. at 195, 55 S.Ct. at 389 (citations omitted).)
 
 
 13
 The Court has reaffirmed this principle on numerous subsequent occasions. See, e.g., Princess Lida of Thurn v. Thompson, 305 U.S. 456, 466, 59 S.Ct. 275, 83 L.Ed. 285 (1939); United States v. Bank of New York & Trust Company, 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331 (1936); Gordon v. Washington, 295 U.S. 30, 55 S.Ct. 584, 79 L.Ed. 1282 (1935). And this court has recognized and invoked the principle. See, e.g., Barrett v. International Underwriters, Inc., 346 F.2d 345, 348 (7th Cir. 1965); Mills v. Smith, 113 F.2d 404, 409 (7th Cir. 1940).
 
 
 14
 It is clear that this jurisdictional rule is applicable to the situation presented by this case since the legal proceedings involved are both actions in rem. The appointment of a receiver and institution of liquidation proceedings in the Illinois court against Prudence constitutes an action in rem. Carter Oil Company v. McQuigg, 112 F.2d 275 (7th Cir. 1940); 1A J. Moore, Federal Practice P0.214, at 2502--03. The fact that the Illinois court does not have actual physical possession of all of Prudence's assets is of no consequence. The constructive possession by Prudence's liquidator is sufficient; his possession is the court's possession.[5] Goldfine v. United States, 300 F.2d 260, 263 (1st Cir. 1962); see also Drexler v. Walters,290 F.Supp. 150, 156 (D.Minn.1968); Safeway Trails, Inc. v. Stuyvesant Insurance Company, 211 F.Supp. 227 (M.D.N.C.1962). In rem jurisdiction attached when the liquidation proceedings were commenced against Prudence. 1A J. Moore, Federal Practice P0.215, at 2508--10. And Blackhawk's petition in federal court to turn over assets was also clearly an action in rem.[6] In order to grant the relief requested, the district court had to exercise control over a res: Prudence's securities held by Harris in escrow.[7] See Carney v. Sanders, 381 F.2d 300 (5th Cir. 1967).
 
 
 15
 It is equally clear from the record that the state court liquidation proceeding was instituted prior to Blackhawk's filing its petition in federal court. Prudence was placed into liquidation on February 6, 1970, and Blackhawk filed its action on June 3, 1971. Therefore jurisdiction over the securities in escrow attached first in the state court, thus excluding the federal court from subsequently exercising control over them.
 
 
 16
 Blackhawk maintains, however, that since the district court possessed ancillary jurisdiction to enforce its judgment entered upon the settlement between Blackhawk and United, its jurisdiction is somehow superior to that of the Illinois court. We disagree. Assuming Blackhawk's turnover proceeding was ancillary to the prior federal proceeding, it nevertheless retained a separate identity. In no way can the two actions which Blackhawk instituted in federal court be deemed to have been one with the filing date of the earlier action controlling. The district court did not seek to exercise control over that property until Blackhawk filed its turnover petition.
 
 
 17
 Nor did the judgment give the federal court any extraordinary power over the escrow superior to that which the state court attained by its prior attachment of jurisdiction. Blackhawk's rights in the securities were those of an ordinary assignee. Thus its remedy was to file its claim in state court and 'stand in line' with all other Prudence claimants. Mills v. Smith, supra, at 409.
 
 
 18
 Therefore, since the Illinois court had already acquired control over the securities of Prudence held in the Harris escrow at the time Blackhawk filed its turnover petition, the federal court lacked power to exercise control over that property. That property had been removed from the in rem jurisdiction of all other courts. In re Rehkopf Mattress Sales, Inc., 479 F.2d 67 (5th Cir. 1973); PPG Industries, Inc. v. Continental Oil Company, 478 F.2d 674 (5th Cir. 1973); Burbridge Foundation, Inc. v. Reinholdt & Gardner, 496 F.2d 326, 327--28 (8th Cir. 1974). The district court should have accordingly dismissed the petition, leaving Blackhawk to resort to the state liquidation proceedings for the enforcement of its rights in the property.[8] Cf. Mills v. Smith, supra, at 409; Carney v. Sanders, supra, at 302--03.
 
 
 19
 The states have a paramount interest in seeing that liquidation proceedings conducted by court-appointed liquidators and overseen by their courts are free from the interference of outside agencies. This interest is of even greater importance when the company undergoing liquidation is a domestic insurance company or other financial institution. Cf. Motlow v. Southern Holding & Securities Company, 95 F.2d 721 (8th Cir. 1938), cert. denied,305 U.S. 609, 59 S.Ct. 68, 83 L.Ed. 388 (1939).[9] The interests of the company's owners, policyholders, and creditors, as well as the public, are best served and protected by an orderly and efficient process of liquidation.[10] The liquidation of Prudence is best left to a proceeding which will settle all of its affairs and dispose of all of its property. Federal courts should refrain from deciding select issues confronting another court in pending proceedings. Fireman's Fund Insurance Company v. St. Paul Fire & Marine Insurance Company, 357 F.Supp. 464 (D.Minn.1973); see also Ahrensfeld v. Stephens, 528 F.2d 193 (7th Cir. 1975); Koehring Company v. Hyde Construction Company, 424 F.2d 1200 (7th Cir. 1970).
 
 
 20
 We therefore vacate the judgment of the district court and remand the case with instructions that it be dismissed for lack of jurisdiction.
 
 
 21
 Vacated and remanded.
 
 
 
 *
 The Honorable Tom C. Clark, Associate Justice (Retired) of the Supreme Court of the United States, is sitting by designation
 
 
 [1]
 Under this arrangement Prudence retained all ownership interests in the securities it placed in escrow. United's rights in the securities were in the nature of a security interest under article 9 of the Uniform Commercial Code. The creation of a security interest does not automatically vest title in the secured party. In fact, article 9 is purposely silent as to whether title to the collateral is in the debtor or secured party. See Ill.Rev.Stat., ch. 26, § 9--202. Rather, the Code leaves the determination of who has title to the parties to the security agreement. 4 Anderson, Uniform Commercial Code: Text, Cases, and Commentary, § 9--101:1, at 3 (2d ed. 1971). The Escrow letter of Instructions from Prudence to Harris, which United agreed to be bound by, provided that Harris held the securities as 'a depositary only,' and stated the terms by which United would acquire title to the securities. The Letter provided that Harris was to hold the securities in escrow for any losses to be paid to United 'as determined by United and Prudence.' In the event that United and Prudence failed to agree as to the amount, if any, of the losses to be paid, Harris could release the securities to United only after a court of competent jurisdiction determined the respective rights to the securities. We believe these provisions, together with other terms of the agreement between the two manifested their intent that title remain in Prudence until either of the above contingencies occurred
 
 
 [2]
 Federal jurisdiction over this action was based upon diversity of citizenship. See 28 U.S.C. § 1332 (1970)
 
 
 [3]
 The court's order entering judgment against United made no mention of the agreement in general or its terms concerning the method in which the judgment was to be satisfied
 
 
 [4]
 The Illinois court's order of February 6, 1970, provided:
 That (the) Director of the Department of Insurance of the State of Illinois, and his successors in office, hereinafter referred to as 'Director,' as Director of Insurance of the said State of Illinois, be and they are hereby authorized and directed to remain in possession of the property as Liquidator and to liquidate business affairs of Prudence Mutual Casualty Company, a corporation, under and pursuant to the provisions of Chapter 73, Paragraph 799 through 833, Illinois Revised Statutes, and that said Director be and is hereby vested as Liquidator with title to all property, contracts and rights of actions of the Prudence Mutual Casualty Company, a corporation, and he is hereby directed to deal with the property and business of Prudence Mutual Casualty Company, a corporation, in his name as Director of Insurance of the State of Illinois. (Emphasis supplied.)
 
 
 [5]
 The securities held in escrow by Harris remained, of course, the property of Prudence. As United's assignee, Blackhawk acquired no greater rights in them than United possessed. See note 1 supra
 
 
 [6]
 For an explanation of what constitutes an in rem action in this context, see United States v. Bank of New York & Trust Company, 296 U.S. 463, 478, 56 S.Ct. 343, 347, 80 L.Ed. 331 (1936):
 The Government urges that the present suits for an accounting are not suits in rem but in personam; and that to allow the federal court to pass upon the right asserted would not necessarily interfere with the jurisdiction or control by the state court over the res. But these suits are not to enforce a personal liability but to obtain possession of the respective funds. The suits are not merely to establish a debt or a right to share in property, and thus to obtain an adjudication which might be had without disturbing the control of the state court. Complainant demands that the depositaries account and pay over to the complainant, as 'the sole and exclusive owner,' the entire funds in their hands. Thus the object of the suits is to take the property from the depositaries and from the control of the state court, and to vest the property in the United States to the exclusion of all those whose claims are being adjudicated in the state proceedings. (Id. at 478, 56 S.Ct. at 347 (citations omitted).)
 
 
 [7]
 This result may not be avoided by our construing the petition since Blackhawk failed to request any other relief which would not have required the district court to exercise control over the securities. See generally, Kline v. Burke Construction Company, 260 U.S. 226, 229--30, 43 S.Ct. 79, 67 L.Ed. 226 (1922); Barrett v. International Underwriters, Inc., 346 F.2d 345, 348 (7th Cir. 1965)
 
 
 [8]
 Blackhawk complains that dismissal of its federal petition will leave it in a quandry of having to choose in which forum--Illinois or Indiana--it should proceed to protect its rights. It is not, of course, this court's function to advise parties as to their future course of action. A few facts appear clear to us, however, which negate any argument by Blackhawk that our decision in this case is inequitable in any way. As stated above, it is clear that the Illinois court possesses prior in rem jurisdiction over the securities, preventing all other courts from ordering their disposition. The Illinois court, of necessity, will determine whether Prudence defaulted on its reinsurance agreements with United. But whether that court will determine the priority between United's liquidator and Blackhawk to that property, or will defer that question to the Indiana court overseeing United's liquidation, is a question in which we intimate no opinion. What is extraordinarily clear, however, is that Blackhawk can and must seek its remedy in the appropriate state court proceedings. See Pufahl v. Park's Estate, 299 U.S. 217, 226, 57 S.Ct. 151, 81 L.Ed. 133 (1936); Mills v. Smith, supra, at 409; Carney v. Sanders, supra, at 302--03. The mere fact that it is 'easier' to do so in federal court is no reason for us to uphold the lower court's assumption of jurisdiction in this case
 
 
 [9]
 The Motlow court stated:
 Experience has demonstrated that, in order to secure an economical, efficient, and orderly liquidation and distribution of the assets of an insolvent corporation for the benefit of all creditors and stockholders, it is essential that the title, custody, and control of the assets be entrusted to a single management under the supervision of one court. Hence other courts, except when called upon by the court of primary jurisdiction for assistance, are excluded from participation. This should be particularly true as to proceedings for the liquidation of insolvent insurance companies . . . (95 F.2d at 725--26.)
 
 
 [10]
 This interest is so great that the Supreme Court has held that a federal court which acquires in rem jurisdiction of a suit to liquidate a financial institution prior to a state court is under a duty to relinquish jurisdiction in order
 
 
 [10]
 This interest is so great that the Supreme by the designated state official in the state courts. Only where the state procedure is shown to be inadequate in protecting the rights of all interested parties may the federal court proceed. Pennsylvania v. Williams, 294 U.S. 176, 185--86, 55 S.Ct. 380, 79 L.Ed. 841 (1935); see also 1A J. Moore, Federal Practice P0.217, at 2516. There has been no showing that the Illinois procedure is inadequate to protect Blackhawk's rights