**COMMISSIONER OF INSURANCE OF THE STATE OF MICHIGAN, Plaintiff,**

v.

**DMB KYOTO PLAZA SHOPPING CENTER, L.L.C., DMB Sandy Plains Junction, L.L.C., and DMB Homeshow Plaza (M.A.) L.L.C., Defendants.**

No. 5:98–CV–108.

United States District Court, W.D. Michigan, Southern Division.

Dec. 31, 1998.

---

James J. Walsh, Jeffrey G. Raphelson, Bodman, Longley & Dahling, LLP, Detroit, MI, for Commissioner of Ins. State of Michigan, plaintiff.

Pamela Chapman Enslen, Miller, Canfield, Paddock & Stone, Kalamazoo, MI, James R. Lancaster, Miller, Canfield, Paddock & Stone, Lansing, MI, for DMB Kyoto Plaza Shopping Center, L.L.C., DMB Sandy Plains Junction, L.L.C. and DMB Homeshow Plaza (M.A.) L.L.C., defendants.

*OPINION AND ORDER ON PLAIN-TIFF'S MOTION FOR REMAND AND ON DEFENDANTS' MOTION TO TRANSFER VENUE*

MILES, Senior District Judge.

Plaintiff Commissioner of Insurance of the State of Michigan ("Commissioner"), acting as liquidator of an insurance company, entered into a purchase agreement under which it agreed to sell certain commercial mortgage loans and real properties to the Flatiron Property Corporation, a Delaware corporation. Defendants DMB Kyoto Plaza Shopping Center, L.L.C., DMB Sandy Plains Junction, L.L.C., and DMB Homeshow Plaza (M.A.) L.L.C. (collectively the "DMB entities") are the designees and assignees of Flatiron's rights under that purchase agreement. On or about July 1, 1998, the Commissioner filed this action in Michigan's Ingham County Circuit Court, seeking a declaratory judgment that the DMB entities are not entitled under the terms of the purchase agreement to reimbursement for certain environmental remediation costs which the DMB entities claim to have incurred in connection with environmental conditions at the subject properties. The Commissioner's complaint also sought a declaration that he, and not the DMB entities, is entitled to monies held in an escrow account established under the terms of the purchase agreement for the purpose of reimbursing the purchaser for environmental remediation costs.

The DMB entities filed a timely notice of removal to this court on July 31, 1998, asserting jurisdiction based on diversity pursuant to 28 U.S.C. § 1332(a)(1). The following motions are currently before the court: (1) the Commissioner's Motion for Remand (docket no. 9), and (2) the DMB entities' Motion to Transfer Venue to the Southern District of New York (docket no. 7). For the reasons to follow, the court grants both motions.

*FACTS*

Confederation Life Insurance Company ("Confed") was a Canadian insurer that did substantial business in the United States. Since 1964, Confed had used Michigan as its "state of entry" in the United States and, as such, Michigan was the primary regulator of Confed in this country. In August, 1994, after Confed became insolvent, Michigan's Ingham County Circuit Court appointed the Commissioner as rehabilitator of Confed. On October 23, 1996, Michigan's Ingham County Circuit Court, acting on the motion of the Commissioner, entered an order directing the Commissioner, who was vested with title to Confed's assets, to liquidate Confed's estate. *See* Plaintiff's Motion for Remand, Exhibit A (*In the Matter of Rehabilitation of the Confederation Life Ins. Co. In the United States*, No. 94–78300–CR, Liquidation Order).

As part of his efforts to liquidate Confed, the Commissioner negotiated several sales of Confed's real estate assets. In February, 1997, the Commissioner entered into a Mortgage Loan and REO Property Purchase Agreement (the "purchase agreement") with Flatiron, under which the Commissioner conveyed Confed's interests in certain properties in California and Georgia.[1] Pursuant to the terms of the purchase agreement, the Commissioner deposited $ 2,000,000 into an escrow account held by The Chase Manhattan Bank ("Chase"), a New York State chartered bank, as escrow agent. The escrow account was established under the purchase agreement for the purpose of reimbursing Flatiron for environmental remediation costs incurred by Flatiron within 225 days after the closing, subject to specified limitations.

Each of the DMB entities is a Delaware limited liability company, and each has its sole and principal place of business in New York. As noted above, the DMB entities are the assignees of Flatiron's rights under the purchase agreement. Seeking to

1. The purchase agreement is attached as Exhibit A to the Commissioner's complaint.

exercise their rights under the agreement, they notified the Commissioner that they had incurred remediation costs, and claimed entitlement to a portion of the amount held in escrow.[2] The Commissioner, apparently believing that the conditions for reimbursement were not satisfied, denied the DMB entities' claims.

Seeking to resolve the dispute as over their entitlement to the escrowed funds, on May 29, 1998 the DMB entities filed an action in a New York court, naming Chase as the holder of the fund and the Commissioner as a claimant.[3] Several days later, counsel for the Commissioner telephoned the DMB entities' New York counsel and requested that the DMB entities voluntarily dismiss the Commissioner from the action on the basis that the Ingham County Circuit Court's liquidation order enjoined all persons and entities from commencing any actions against the Commissioner (as liquidator) or Confed's assets. Although the DMB entities disagreed with the Commissioner's view of the liquidation order, they nonetheless discontinued the New York action against the Commissioner, continuing to pursue it against Chase and the escrow fund.

Apparently unwilling to have the New York action continue in any event, the Commissioner filed a motion in the Michigan liquidation proceedings seeking an order enjoining the DMB entities from further prosecuting the New York action. At the conclusion of a show cause hearing on July 22, 1998, the Ingham County Circuit Judge presiding over the proceedings, Judge Thomas L. Brown, granted the Commissioner's motion.[4] Although the DMB entities contend that they are currently appealing that ruling, they also contend that they have sought a voluntary dismissal of the New York action.

The Commissioner thereafter filed this declaratory action against the DMB entities in the Ingham County Circuit Court. Filed separate and apart from the liquidation proceedings, the action was given a different case number and assigned by blind draw to a different judge.[5] (The action was subsequently re-assigned to Judge Brown.) The DMB entities filed their notice of removal on July 31, 1998. On September 3, 1998, the Commissioner filed his Motion for Remand, arguing that the action should be remanded to the state court because this court lacks subject matter jurisdiction. More specifically, the Commissioner's motion asserted that jurisdiction was lacking because the action "concerns the distribution of assets over which the Ingham County Circuit Court has *in rem* jurisdiction" and "federal courts cannot exercise jurisdiction over property after a state court has taken jurisdiction over it in an *in rem* proceeding." Alternatively, the Commissioner ar-

---

2. Defendant DMB Kyoto Plaza Shopping Center demanded reimbursement of $181,285, defendant DMB Sandy Plains Junction demanded reimbursement of $250,000, and defendant DMB Homeshow Plaza demanded reimbursement of $237,000. Complaint, ¶s 11–13.

3. The DMB entities have filed an affidavit of their New York counsel, Roni Schneider, which among other things describes the filing of the New York action. Although a copy of the complaint in that action was intended to be provided as an exhibit to the Schneider affidavit, *see* Defendants' Memorandum of Law in Opposition to Motion to Remand at 5; Schneider Affidavit at 4, ¶ 10, in fact no such copy has been provided to the court. However, because this omission appears to be inadvertent, and because the affidavit describes the action and the Commissioner has not dis-

puted that description, the omission is not material to the court's resolution of the pending motions.

4. In so ruling, Judge Brown adopted the Commissioner's position that the New York action was a wrongful attempt by DMB to obtain Confed assets which were under the Michigan court's jurisdiction:

> ... My ruling is that this lawsuit is going to go forward in this jurisdiction and anyone that starts a lawsuit involving assets of this estate someplace else is in contempt of this Court's order....

Defendants' Memorandum of Law in Opposition to Motion to Remand, Exhibit D (Transcript of July 22, 1998 Hearing) at 15.

5. The declaratory action, No. 98–88529–CK, was originally assigned to Judge Stell.

gued that this court should abstain from hearing the case. The Commissioner's motion did not raise any other issues with respect to the removal procedure.

Additional facts relevant to the disposition of the parties' motions are discussed in the analysis which follows.

## ANALYSIS

### 1. The Commissioner's Motion for Remand

The Commissioner argues that the commencement of the insolvency proceedings under Michigan law gave the Ingham County Circuit Court constructive possession of and *in rem* jurisdiction over Confed's assets. Because the present action is also an action *in rem* or *quasi in rem*, the Commissioner further argues, this court's involvement improperly intrudes upon the Michigan court's exclusive right to decide matter affecting the possession, title, and control of Confed's assets.

■ "A common-law rule of long standing prohibits a court, whether state or federal, from assuming in rem jurisdiction over a res that is already under the in rem jurisdiction of another court." *United States v. One 1985 Cadillac Seville*, 866 F.2d 1142, 1145 (9th Cir.1989) (citing, among others, *Penn General Casualty Co. v. Com. of Pennsylvania*, 294 U.S. 189, 195, 55 S.Ct. 386, 79 L.Ed. 850 (1935)). "The purpose of the rule is the maintenance of comity between courts; such har-

mony is especially compromised by state and federal judicial systems attempting to assert concurrent control over the res upon which jurisdiction of each depends." *Id.* However, "[t]he rule against concurrent in rem proceedings is not a constitutional limitation upon the jurisdiction of the federal courts. Rather, it is a prudential limitation applied by the Supreme Court in the interest of judicial harmony." *Id.* Moreover, this doctrine, while "necessary to the harmonious cooperation of federal and state tribunals[,]" has "no application to a case in a federal court based upon diversity of citizenship, wherein the plaintiff seeks merely an adjudication of his right or his interest as a basis of a claim against a fund in the possession of a state court." *Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 466, 59 S.Ct. 275, 83 L.Ed. 285 (1939).[6]

■ *In rem* proceedings are usually broadly defined as those actions in which the court must possess or control the property in order to make effective the relief it grants. *Penn General Casualty Co.*, 294 U.S. at 195, 55 S.Ct. 386. In order to determine whether this action may be deemed *in rem*, or *quasi in rem*, the court must examine the relief sought in the Commissioner's complaint. In his complaint, the Commissioner prays for a declaratory judgment: (1) declaring that the DMB entities "are not entitled to reimbursement under paragraph 14(c) of the Purchase Agreement[,]" and (2) declaring

6. *See also von Bulow v. von Bulow*, 634 F.Supp. 1284, 1296 (S.D.N.Y.1986), in which the court stated that

... In [*Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939)], the Supreme Court made it clear that the principle allowing a court first assuming jurisdiction over property to maintain and exercise that jurisdiction to the exclusion of another court is an exception to the general rule that a state and federal court may simultaneously adjudicate the same issues. This exception 'does not apply to a case in federal court based upon diversity of citizenship wherein the plaintiff seeks merely an adjudication of his right or interest as a basis of a claim against a fund in the possession of a state

court.' *Id.* at 467, 59 S.Ct. at 281. The longstanding rule that a federal court may adjudicate a right to a fund in the exclusive custody of a state court was articulated in *Markham v. Allen*, 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256 (1946):

[W]hile a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court, it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court.

*Id.* at 494, 66 S.Ct. at 298 (citations omitted).

that Confed "is entitled to the money held in the Chase environmental escrow account[.]" Complaint at 5.

■ The Commissioner argues that this case is "strikingly similar" to *Blackhawk Heating & Plumbing Co. Inc. v. Geeslin,* 530 F.2d 154 (7th Cir.1976), in which the court held that the district court lacked jurisdiction to entertain an action to turn over escrowed assets of an insolvent insurance company that was already under the supervision of an Illinois state court. 530 F.2d at 158–60. However, *Blackhawk* involved a conflict between two *in rem* proceedings involving securities belonging to an insurance company, Prudence, which retained all ownership interest in the securities under the applicable escrow agreement. 530 F.2d at 155 n. 1 and 158 n. 5. In contrast, this action, filed by the Commissioner against the DMB entities in a Michigan court, is not *in rem.* Evidence that this action is not an *in rem* proceeding is the manner in which the Commissioner filed it, as described above. In his complaint, the Commissioner seeks a declaratory judgment as to the parties' rights to the funds; however, the Commissioner joined neither the funds' holder (Chase) nor the res itself.[7]

■ The court also expresses doubt regarding whether the Michigan court retained *in rem* jurisdiction over the escrowed funds. Certainly, the Michigan court had general control over Confed's assets by virtue of the liquidation proceedings. However, the Commissioner, vested with the authority to liquidate those assets, undertook to do so—and the purchase agreement at issue in this case is a result of those efforts. Under the terms of that agreement the Commissioner, acting under the authority of the Michigan court, disposed of certain Confed assets. That some of these assets remain in the Chase account is immaterial; what is material is that the Commissioner relinquished control over the escrowed funds and did so clothed with full authority. After the environmental reserve escrow was created, those funds—the res—were no longer a part of the liquidation proceedings. *See McDonough Caperton Shepherd Group, Inc. v. Academy of Medicine,* 888 F.2d 1392, Nos. 89–3045 and 89–3163, 1989 WL 128675, at **4–5 (6th Cir. Oct.30, 1989) (district court did not err in refusing to dismiss interpleader action on abstention grounds based on pendency of New York liquidation proceedings, where plaintiff was in possession of funds and any part of the res determined to belong to insurer could be transferred to New York for inclusion in those proceedings).[8] Under the

---

7. The Commissioner argues that this is not an *in personam* action because he is not seeking to impose any personal liability on the DMB entities. However, because the Commissioner is seeking a declaration that would be binding on those entities (a declaration that they are not entitled to reimbursement under the terms of the purchase agreement), this action unquestionably has characteristics of an *in personam* action.

8. In paragraph 11(a) of the Purchase Agreement, the Commissioner warranted that under the liquidation order entered by the Ingham County Circuit Court, he had "all requisite power and authority" to liquidate Confed's assets, "subject to the powers and authority of the Court." In paragraph 11(b) of the agreement, the Commissioner further warranted that

Pursuant to, among other things, the Michigan Insurance Code, prior orders of the Court, and the Liquidation Order, [the

Commissioner] has all requisite power and authority to enter into this Agreement and has all requisite power and authority to perform its obligations hereunder. The execution and delivery by [the Commissioner] of this Agreement, and the performance by [the Commissioner] of [his] obligations hereunder have been duly authorized and no other acts or proceedings on the part of [the Commissioner] are necessary to authorize the execution, delivery and performance of this Agreement. This Agreement has been duly executed and delivered by [the Commissioner]. Assuming the execution and delivery of this Agreement by the other parties hereto, this Agreement is a legal, valid and binding obligation of [the Commissioner], enforceable against [him] in accordance with its terms[.]

Paragraph 14(c) of the purchase agreement, which addresses the issue of reimbursement for environmental claims, provides (among other things) that

circumstances, the Michigan court could not be deemed to have constructive control or possession of those funds at the time the Commissioner filed this action.

The Commissioner argues that this action is substantively "identical" to the New York action filed by the DMB entities. Plaintiff's Reply Brief at 6 n. 1. Assuming that that action is still pending, it cannot possibly be identical if the Commissioner is no longer a party. Whatever may be the case in the New York proceedings, however, the current suit as filed by the Commissioner must be deemed *in personam* to the extent that it seeks a declaration that the DMB entities are not entitled to reimbursement under the terms of the purchase agreement. The court's resolution of this request for relief should in no way interfere with the Michigan liquidation proceedings. Likewise, a resolution limited to the question of the DMB entities' entitlement to reimbursement under the terms of the agreement will not tread upon any possession of the res by any other court. Thus, even if another court may be deemed to have exclusive in rem jurisdiction over the escrowed funds, this court's exercise of its diversity jurisdiction to decide the validity of the DMB entities' claim for reimbursement will not interfere with that jurisdiction.

The Commissioner further argues that the McCarran–Ferguson Act operates to prevent the DMB entities from invoking this court's removal jurisdiction. Section 2 of the McCarran–Ferguson Act provides as follows:

> (a) State regulation
>
> The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
>
> (b) Federal regulation
>
> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance[.]

15 U.S.C. § 1012. Congress enacted this statute

> ... for the specific purpose of consigning to the States broad and primary responsibility for regulating the insurance industry. *See S.E.C. v. National Securities, Inc.,* 393 U.S. 453, 458, 89 S.Ct. 564, 567–68, 21 L.Ed.2d 668 (1969); *Barnhardt Marine Ins., Inc. v. New England Int'l Sur. of Am., Inc.,* 961 F.2d 529, 531 (5th Cir.1992).... Ordinarily, federal law pre-empts conflicting state law by virtue of the Supremacy Clause. *See* U.S. Const. art. VI, cl. 2. The McCarran–Ferguson Act reverses that effect in the narrow range of cases involving state regulation of the insurance industry.

By its terms, the Act permits a state law to reverse pre-empt a federal statute only if: (1) the federal statute does not specifically relate to the 'business of

> Seller shall deposit in escrow at Closing, with an escrow agent and under terms mutually satisfactory to the parties hereto, an amount equal to $ 2,000,000 for 225 days following the Closing Date, which amount shall be made available only to satisfy the obligations of Seller under this Section 14(c).

Paragraph 24 of the purchase agreement specifies that the agreement "WILL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO THE PRINCIPLES OF CONFLICTS OF LAW THEREOF."

A separate escrow agreement contains detailed provisions specifying Chase's duties as escrow agent, including its obligations and rights in the event of a dispute between the parties over funds held in escrow. *See generally* Escrow Agreement, ¶ 3. In the event of a dispute between the seller and purchaser over entitlement to the funds, Chase is authorized to either continue to hold the funds, bring an interpleader action and deposit the funds "into any court of competent jurisdiction," or, in the event of litigation between the seller and purchaser, to deposit the funds "with the clerk of the court in which such litigation is pending." *Id.,* ¶ 3(b).

insurance,' (2) the state law was enacted for the 'purpose of regulating the business of insurance,' and (3) the federal statute operates to 'invalidate, impair, or supersede' the state law. . . .

*Munich Amer. Reinsurance Co. v. Crawford,* 141 F.3d 585, 590 (5th Cir.1998).

In this case, there can be no doubt that the federal diversity statute does not relate specifically to the business of insurance. Thus, the court need address only the last two requirements quoted above. As the court noted in the *Munich* case,

> The category of laws enacted 'for the purpose of regulating the business of insurance' is broad and consists of those laws 'that possess the end, intention, or aim of adjusting, managing, or controlling the business of insurance.' *U.S. Dept. of Treasury v. Fabe,* 508 U.S. 491, 505, 113 S.Ct. 2202, 2210, 124 L.Ed.2d 449 (1993) (quoting Black's Law Dictionary 1236, 1286 (6th ed.1990)). Statutes that focus on protecting the relationship between the insurer and insured are laws regulating the business of insurance. *Id.* at 501, 113 S.Ct. at 2208. The three criteria relevant in determining whether a regulated practice properly involves the relationship between the insurer and insured include whether: (1) the practice has the effect of transferring or spreading a policyholder's risk; (2) the practice is an integral part of the policy relationship between the insurer and the insured; and (3) the practice is limited to entities within the insurance industry. *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982). None of these criteria is dispositive. *Id.*

141 F.3d at 590–91.

In this case, the Commissioner argues that the Michigan laws in question are the provisions of Chapter 81 of the Michigan Insurance Code, M.C.L. §§ 500.8101 *et seq.,* which regulate proceedings in connection with insolvent insurance companies. When a Michigan insurance company is declared insolvent and placed into state delinquency proceedings by the Commis-

sioner, the Ingham County Circuit Court is vested with "sole jurisdiction" over the action. M.C.L. § 500.8104(3). Once delinquency proceedings have commenced, the Ingham County Circuit Court may issue an injunction to prevent interference with the receiver, waste of the insurer's assets, or the commencement or further prosecution of any actions against the estate. M.C.L. § 500.8105. The Michigan court in this case issued just such an injunction, precluding the DMB entities from prosecuting the New York action.

The Commissioner argues that the provisions of Michigan's Insurance Code serve the purpose of regulating the business of insurance and, therefore, fall within the scope of the McCarran–Ferguson Act. The court has reason to doubt the merits of this argument. To the extent that the relevant provisions of Michigan's Insurance Code regulate policyholders, they may be deemed laws enacted for the purpose of regulating insurance. On the other hand, to the extent that they are designed to further the interests of general creditors, their pre-emptive impact is uncertain. *Fabe,* 508 U.S. at 508–09, 113 S.Ct. 2202. This case, however, does not require the court to fully immerse itself in the construction of McCarran–Ferguson. The Commissioner's assertion of a single-forum right is not substantiated by Michigan's own law. Michigan law not only bestows upon the liquidator the power "[t]o enter into contracts necessary to carry out the order to liquidate[,]" M.C.L. § 500.8121(1)(k); but also bestows upon the liquidator the power "[t]o institute in the name of the insurer or in his or her own name suits and other legal proceedings, *in this state or elsewhere . . .* " M.C.L. § 500.8121(1)(*l*) (emphasis supplied). Michigan law thus fails to create an exclusive single-state forum for resolution of disputes arising during the course of the liquidation. *See Central States, Southeast and Southwest Areas Health and Welfare Fund v. Old Security Life Ins. Co.,* 600 F.2d 671, 677 (7th Cir.1979)

(applying Missouri law). Even more important, however, is the following consideration: that the McCarran–Ferguson Act does not remove diversity jurisdiction from federal courts in insurance matters. *Martin Ins. Agency, Inc. v. Prudential Reinsurance Co.*, 910 F.2d 249, 254 (5th Cir. 1990); *see also Munich*, 141 F.3d at 595 ("We surely are not saying that a State has the power to enjoin a party generally from pursuing federal remedies in federal court. Nor are we saying that Oklahoma [insurance] law divested the district court of its diversity, jurisdiction"); *Grimes v. Crown Life Ins. Co.*, 857 F.2d 699, 702 (10th Cir.1988) ("we are hesitant to accept the proposition that a state statute, even when buttressed by the federal policy expressed in the McCarran–Ferguson Act, can affect the invocation of federal diversity jurisdiction").

■ Although abstention may be appropriate in some disputes which could implicate state liquidation proceedings, *id.*, the posture of the present case does not permit it. Title 28 U.S.C. § 1447(c) provides as follows:

> A motion to remand the case on the basis of any defect other than lack of subject · matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded....

9. The Commissioner argues for the first time in his reply brief that he should not be held to § 1447(c)'s 30–day requirement for asserting abstention as a basis for remand, because he mistakenly believed that he had until September 2, 1998 to file his motion. The Commissioner contends that he was misled into this belief by the DMB entities, who served him with a copy of the Notice of Removal which bore an illegible date/time stamp. (Rather than attempting to confirm the actual date of removal, the Commissioner apparently chose to believe that the Notice of Removal was filed on either Monday, August 3 or Tuesday, August 4, 1998, the latter being the date on the Notice of Filing served on the

■ As the DMB entities have noted, the Commissioner's motion for remand, which was filed more than 30 days after the filing of the Notice of Removal, is untimely under § 1447(c) to the extent that it asserts abstention as a basis for the remand. Under the 1996 amendment to § 1447(c), "abstention—which is a discretionary doctrine—qualifies as something 'other than lack of subject matter jurisdiction' and does come under the 30–day time limit." 28 U.S.C.A. § 1447(c) (West Supp. 1998) (Commentary on 1996 Revision). As the court has noted above, this court does not lack diversity jurisdiction over this action. *Martin*, 910 F.2d at 254. Any other "defects" which might provided a basis for remand were not timely asserted, and the court will not consider them.[9]

### 2. *The DMB Entities' Motion to Transfer Venue*

■ The DMB entities seek a transfer of venue to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).[10] The Commissioner has opposed such a transfer. To transfer an action under § 1404(a), the following criteria must be satisfied: (1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) transfer is in the convenience of the witnesses and parties. *International Show Car Ass'n v. American Society of Composers, Authors & Publishers*, 806 F.Supp. 1308, 1310 (E.D.Mich.1992). In

Commissioner.) However, federal courts must strictly observe the 30–day deadline for filing motions to remand. *Alter v. Bell Helicopter Textron, Inc.*, 944 F.Supp. 531, 535 (S.D.Tex.1996). Therefore, the court would be unable to grant the Commissioner an extension even if the court was inclined to find that he was "misled" into filing an untimely motion for remand.

10. Title 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

ruling on such a motion, the court must consider the following factors:

(1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice.

*Id.* (citations omitted).

This action could have been brought by the Commissioner in the Southern District of New York. Furthermore, venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(a).[11] The court also finds, based on the submissions of the parties, that the convenience of parties and witnesses and the interests of justice favor a transfer to that district.

 The Commissioner argues that the potential witnesses in the action are scattered among a variety of locations and that this strongly suggests that the convenience factor does not favor either party. *E.g., Shaw Group, Inc. v. Natkin & Co.,* 907 F.Supp. 201, 205 (M.D.La.1995). However, a closer examination of the nature of the dispute between the parties indicates that the convenience factor strongly favors a transfer. Apart from the liquidation proceedings, Michigan has virtually no connection to the conduct and events giving rise to the underlying transaction. Two of the properties at issue are in California, and the third is in Georgia. In addition, the Commissioner's position appears to be that little (if any) witness testimony will be required to resolve the dispute because the parties' disagreement is fundamentally one of interpretation of

paragraph 14 of the purchase agreement, the language of which he contends is "clear and unambiguous." Moreover, the two persons who would apparently serve as the Commissioner's key witnesses (Cyril Jones and Julian Burke) reside in California; thus, there appears to be no significant difference in the inconvenience the Commissioner will suffer based on the location of these persons.

In contrast, the DMB entities, who will undoubtedly be required to establish satisfaction of the contractual provisions, have identified their principal witnesses as persons who either work or reside in New York City, or who work or reside in locations relatively close thereto (such as Philadelphia, Pennsylvania or New Jersey). In addition, they originally sought to have a New York court resolve the dispute, and, but for the Commissioner's inaccurate position that the dispute could not be resolved there (a position adopted by the Ingham County Circuit Court), it would in all likelihood have been resolved there. Moreover, the purchase agreement's choice of law provision cannot be ignored. The relevant factors clearly favor the transfer of this action sought.

### CONCLUSION

The court denies the Commissioner's motion for remand. The court also grants the DMB entities' motion to transfer venue to the Southern District of New York.

---

11. Title 28 U.S.C. § 1391(a) provides as follows:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.